May Term,
1856.

LEWIS
v.
HATHMAN.

---

LEWIS, for the use, &c. *v.* HATHMAN.

Where the payee of a note transferred it by mere delivery to a third person, a suit at law could only be brought, under the R. S. 1843, in the name of the payee against the maker, and the specification that it was for the use of the usee, was merely directory to the officer who might collect the money, to whom he should pay it, and from whom, in certain contingencies, he should collect the costs.

In such suit, the usee had not the rights of an assignee against the maker, but the defendant might plead any matter of defence growing out of the transaction between him and the payee.

APPEAL from the *Randolph* Circuit Court.

STUART, J.—Suit against *Hathman,* on a note of 50 dollars, commenced before a justice of the peace in *February,* 1853. Judgment in favor of the plaintiff for the amount of the note and interest. On appeal to the Circuit Court, the cause was tried on the merits, and judgment was rendered in favor of the defendant, *Hathman. Lewis,* suing for the use, &c., appeals.

The evidence is all made part of the record, in proper form. The trial in the Circuit Court was had in *April,* 1853, before the new practice act took effect. So that the

Thursday,
June 12.

May Term,
1856.

Lewis
v.
Hathman.

cause is to be governed by the well-settled rules of practice prevailing under the old system.

The note in suit, dated *December* 23, 1850, and due in eighteen months, was given for a patent right for cutting screws on the rails of bedsteads, of which *Lewis*, it seems, represented that he was the patentee. Sometime between the date and the maturity, the note passed into the hands of one *Huffman* without assignment, and was sold by *Huffman* to *Ludy* and *Aker*, the usees in this action.

This transfer was also without assignment; *Ludy* and *Aker* having no other evidence of title to or interest in the note, than simply possession.

Before the purchase from *Huffman*, *Ludy*, one of the usees, called on *Hathman*, the maker, to inquire about the note. The substance of *Hathman's* answer, so far as it relates to this part of the case, will be best understood in his own words. At the instance of the plaintiff, he testified as a witness in the cause, thus: " I gave this note to *Spencer Lewis* for a patent right. About a month after the note was given, Mr. *Ludy* called on me at *Allen's* shop in *Winchester*, and asked me if he traded for the note, whether or not it would be good? I told him it was good, so far as I knew, and expected to pay it when due. Simultaneously with the making of this note (and another of like amount), a deed was executed to me for the county of *Randolph*. The letters patent to *Lewis* purported to be issued *April* 9, 1850, as recited in the deed to me. It seems that the patent right of *Lewis* was suspended by that of *Gross* and *Campbell* of *Tiffin*, *Ohio*. These gentlemen notified me of their prior right, and since then I have neither sold nor used the right. I also returned the notes given for the sale of it, disclaiming all right to *Lewis's* patent, and refusing to pay for it. At the time of the conversation with *Ludy*, above referred to, I had not the least knowledge or intimation of the defect in *Lewis's* title."

The case is very fully presented in the evidence of *Hathman* himself. The other witnesses, and the title papers, but go to the same points. The patent to *Gross* and *Campbell*, as set out in the record, bears date, *April*, 1851.

The patent to *Lewis* is not in evidence, but only referred
to in the deed to *Hathman.* It seems that the right of
*Lewis* to the specified improvement, was contested at the
patent office by *Gross* and *Campbell.* On the 17th of
*March,* 1851, the commissioner of patents decided in favor
of the latter and against *Lewis.*

The note in suit, dated, as we have seen, in *December,*
1850, must be governed by the law in force at that time.
The suit was also instituted and tried under the former
practice.   So that it will not be necessary to inquire what
changes, if any, the new revision has made in relation to
usees.

Sections 6 and 7, R. S. 1843, pp. 576–7, gave the *as-
signee* of a promissory note the right to sue in his own
name.   The 8th and 9th sections save to the maker any
legal or equitable defence which he might have had before
notice of assignment.   But the rights and liabilities cre-
ated and defined in these sections, arise out of the relation
of *assignee* and maker, when assignment was the mode
by which the note was transferred.   No provision seems
to be made for usees.   Such a case as that presented by
the record, is not contemplated by the act.   It does not
seem to be embraced by either its terms or spirit.   It saves
the rights of the maker against the *assignee* before notice
of assignment.   It defines the rights of the assignee *after*
notice.   But the usee is not mentioned.   He has no rights
recognized or secured by the act.   The statute leaves his
rights and position precisely what they were at common
law.   What these rights are, is clearly pointed out by *Chit-
ty.*   In general, the action on a contract, whether express
or implied, must be brought in the name of him in whom
the legal interest is vested.   If the party beneficially inter-
ested needs to use his name, it must generally be with his
concurrence.   Courts of law will not ordinarily invest the
mere beneficial claimant with the ability to adopt legal
proceedings in his own name, even though the exclusive
interest in the benefit to be derived from the contract be
in such beneficiary.   1 Chitt. Pl. 2, 3.

Such is the well-settled rule at common law.   And the

statute of 1843 has made no change favorable to the usees.

*Ludy* and *Aker* are therefore no parties to the record. Their names are merely directory to the officer who collects the money, to whom he is to pay it; and from whom in certain contingencies he is to collect the costs. The position of a usee, and that of a relator, are thus in many respects identical. *The State* v. *Clark*, 4 Ind. R. 315. *Lewis*, in this case, like the state in that, is the real party plaintiff. Whatever might have been the liability of *Hathman* to *Ludy* and *Aker,* had they been assignees, and the suit in their own names, obtaining the notes as they did clearly on the faith of his assurance of payment at maturity, the case is entirely changed when *Hathman* is confronted in an action by the payee of the note. In such a suit, *Hathman* is clearly entitled to any defence growing out of the transaction between the payee and maker. For as to this action, no legal rights of third parties have intervened. As mere usees, holding the note without assignment, *Ludy* and *Aker* have no legal rights which can be enforced in their own names.

As between *Hathman* and *Lewis*, the case is a plain one. If the alleged patent for which the notes were given, has been rendered void by the establishment of a superior right, the consideration of the notes has clearly failed. That it has so failed, is sustained by the evidence, and is not disputed by the opposite party. The whole claim is rested on *Hathman's* representation to *Ludy*, that the note was good, as far as he knew, and would be paid at maturity. But as this representation did not induce *Ludy* and *Aker* to acquire the legal title to the note, it imposed no additional obligation on *Hathman*, at least in this form of action. It could not affect his relations with *Lewis*. As to him, whether suing in his own name for his own benefit, or that of some one else, the failure of consideration being entire, the defence to the note was complete.

There can be no pretence of fraud, or even negligence, on the part of *Hathman*. He was necessarily ignorant of the defect in *Lewis's* title, at the time he told *Ludy* the

note was good and should be paid. This representation to *Ludy* was in *January*, 1851. The contest for the patent right, which resulted in the defeat of *Lewis*, was not determined till *March*, 1851, nearly two months after that representation.

Upon the case made in the record, *Hathman* is clearly not liable on the note.

*Per Curiam.*—The judgment is affirmed with costs.

*B. Mc Clelland*, for the appellant.

*J. Brown, W. A. Peelle* and *T. M. Browne*, for the appellee.